The next case will be 071150 In Re Chatani. Mr. Springer, whenever you're ready. Good morning, Your Honors. May it please the Court, Colby Springer for the appellants Masayuki Chatani, Glenn Vendetta, and the Real Party Interest, Sony Computer Entertainment America, Inc. I believe I've reserved three minutes for rebuttal. This case, Your Honors, at its core is very simple. It's about common sense and logic. When the claims are given their plain and ordinary meaning, with proper consideration given to both grammar and context of the claims as a whole, an inherent order is apparent in the claims. That inherent order, that required order of execution, that is not disclosed in the prior reference of record, the Cohen reference. So this all, so the real issue here rests solely on whether or not the claims require the sequence articulated in that order, or whether or not they allow for changing the order. That's the issue. Correct. Correct. It is the appellant's argument that the claims do require a particular order, and that order is not only not present in Cohen, there is in fact no way that Cohen could be interpreted, at least based on the teachings of the disclosure in Cohen, there's no way that Cohen could be interpreted in any other way. Can I just ask you why you didn't amend the claims then? I mean, if that was the dispute, if that's the whole reason we're all here, why at least if you concede there's at least some absence of complete clarity, you just didn't add language on the application to avoid all of this? The amendment could have been made, in hindsight being 2020, could the amendment have been made? Yes. But the fact of the matter, it was not, and we are here where we are today with the claims being as they are, the claims being in pristine form, and to a certain extent with the uncertainties that are often involved, as the previous case just showed with respect to Festo, there's obviously an eagerness to avoid amending the claims in any case if at all possible because there's no telling what will happen subsequent with respect to Markman and patent litigation. In addition to the arguments advanced by the appellants concerning this required order, the director has raised the issue of waiver, which I'd like to speak to as the appellants believe that there clearly is no waiver in this matter. The director raises the issue, I think the director oversimplifies specifically the case of N. Ray Watts, which the director relies on for the teaching or for the requirement that a waived issue cannot be raised on appeal. What is the waiver issue here? What is the, can you just articulate briefly what the waiver is? What aspect of the argument? The director, the appellants interpretation of what the director argues is that this issue that there be a required order of the claims was not raised during prosecution and before the Board of Patent Appeals. Now admittedly, the two cases that the appellant relies on heavily, the Interactive Gift Express and the Altiris versus Symantec decisions, those were not raised before the Board of Patent Appeals and Interferences. That said, that does not necessarily equate to the issue having been waived. N. Ray Watts, a more careful reading of N. Ray Watts, in fact, teaches that while a new issue may not be raised on appeal, a clarification or reinforcement of issues raised below can be appropriately addressed on appeal. That's found in footnote three. Looking back to the appellate record, if you look specifically at the appellant's reply brief on pages five, six, and seven, which correspond to the record at 134 through 136, numerous discussions with respect to the requirement as set forth in Verdigal Brothers concerning the requirement that a prior art reference teach each and every limitation as set forth in the claim. So there must be not only a teaching of all the elements, but as set forth in the claim. As set forth in the claim, in this case, would encompass that required order of execution. Additional cases, including the manual patent examining procedure at 2131, were addressed by the appellant before the Board of Patent Appeals and Interferences. Those cases include the Richardson v. Suzuki and the N. Ray Bond case, which require the prior art to teach the identical invention and for it to completely disclose the same. And N. Ray Bond specifically requires the elements of the claim to be disclosed in the exact same manner. While Interactive Gift Express and the Altiras v. Symantec decision, again, were not mentioned by name, the substance of that argument, the claims having to have a required order of steps, not to mention the factual basis for that argument, were addressed numerous times during prosecution and for the Board. It's for that regard that the appellant contends there is no issue of waiver here. So getting on to the issue itself, you rely on some language in the spec. I actually may have been misreading it. It seems to me there's something in the spec that says, in the next operation. I don't know that you cited it or maybe I'm misciting it. The argument raised by the appellant with respect to the substantivity of the required order is that the claims on their face define everything. The plain and ordinary meaning and taking into context, again, proper grammar and as well as contextual import, the claims say what they say. In this case, there's basically two elements that are really at issue. That's the step of determining that there has been a participant, for example, in Node in the Computer Network, determining that a participant has disconnected from the online session. Has disconnected means exactly what it says. Has disconnected. It's past tense. It's done. It's affirmative. There's a disconnection. It's not planning to disconnect.  It is disconnected. It's done. Elvis has left the building. The next step from that is a broadcast by remaining participants in the session saying, hey, participant A has left the session. We need to make some sort of adjustment. So broadcasting a notification in the Chitani, the appellant's application, broadcasting a notification that there has been a disconnection, again, affirmatively requires that disconnection to take place. So in effect, the appellant's claims require that there, A, to be an affirmative disconnection, B, for there to be a determination that the disconnection has taken place. But the prior art is referring to the remaining clients. And so they're remaining after what? The remaining clients in the Cohen reference. After what has happened. Yeah. After there's been a disconnection. Ah. So there's been a disconnection first, and then they're the remaining clients. They're left. There are remaining clients, but that's not what is claimed. Again, what is claimed in the appellant's application is disconnection, determination of disconnection, and then a broadcast concerning that disconnection. Cohen, while it's admittedly in the same space, maintaining network connectivity, network continuity, it goes about it in a very different way. Cohen goes about it in what the brief refers to as sort of an orderly departure. Now, I guess I'm having trouble following you, because this all goes to the heart of the question, which is whether or not this order is required, right? Yes. How does that inform whether this order is required? You're saying that detecting has to go before broadcasting. There's something inherent in the claim language that requires that? Yes. And that is? The fact the language has disconnected. If you look at the broadcast. Well, okay. Well, maybe that's where I'm missing. Which, there's several places where has disconnected appears. So if you. Are you dealing with detecting, or are you dealing with the broadcasting? So if you look in the broadcast step of the appellant's application, broadcasting a notification that the participant has disconnected. You can't broadcast notification concerning that disconnection until the disconnection has, in fact, occurred. And in between that disconnection and the broadcast is the determination of the disconnection. This is where it comes down to the claim on its face has disconnected. There must be an affirmative, completed act of disconnection before there can be a determination of that disconnection, and then a broadcast by another participant saying, hey, guys, this participant's no longer here. He has disconnected. He's no longer a part of the session. But if you look at the cone reference, that seems to suggest that it's the participant, the first host, they call him exiting. So on his way out the door, he sends the notification, and by the time the notification is received by the other participants, he's gone. So by the time they receive the broadcasting, he's already exiting. And that has disconnected. Why wouldn't that fall within the broadcasting step? I would disagree. It does come down to an issue of semantics, but the semantics, you know, in patent litigation and claim construction of all areas of the law, semantics are probably one of these areas where those semantics matter most. In the cone reference, as you referenced, there's only one entity making that broadcast. It is the entity that is leaving the session, and this is why I was referring to earlier as the orderly departure notification. This node or this participant in cone makes a determination based on whatever grounds that it's going to leave that session. Before it does so, it sends out a broadcast to all the other participants saying, hey, guys, I'm about to take off. Anything that I'm responsible for, now would be a good time to reassign those responsibilities. The other participants, they receive that notification. The responsibilities are reassigned. The entity leaves the session. You can't broadcast the fact that you have disconnected, has disconnected. You cannot broadcast a notification that you have disconnected if you've already disconnected. You can't? I mean, you're saying that once the disconnection has occurred, the host disconnection package can't be received by the remaining clients? Could it be received? Yes. It can be. It is, or it could be, yes, but that's not what is claimed. What is claimed in the appellant's application is determining that there has been a disconnection, an affirmative disconnection, followed by a broadcast that that entity has disconnected. Looking back to the cone reference, and this is where the logic comes in, is you cannot make a broadcast to a session that you're no longer a part of. If I was to leave the room and make an announcement in the hallway, I'd be making an announcement to the hallway, but I would not be making an announcement to the courtroom. I thought you said a moment ago that it is possible for the information to be delivered to the remaining clients after the host has already departed. It's possible for that packet to be sent and received, but sending that packet and receiving that packet are distinctly different than an affirmative broadcast by remaining participants in the session stating that participant has disconnected. Which you're arguing here. It's the same information though, isn't it? It arguably is the same information, but the hypothetical you offer is very different than what was presented by the examiner and the director during prosecution. If this was an argument the director, I'm sorry, the examiner wished to make during prosecution, then there may have been an inherency type of argument or perhaps even a 103 type argument. Those arguments were not made. What was made instead was a pure 102E rejection based on the cone reference. Under the cone patent, what happens if someone steps on the plug of the host computer and no one notices it? The man is cleaning the floor. This is an excellent question. What happens? And this is one of the distinctions we raised with respect to Cohen's orderly departure and Chitani's unexpected departure. So in your scenario that you offered, which is also addressed in the appellant's opening brief, is what happens if someone does step on that plug? If you look to column 11, line 61 of the cone reference, which is on page 15 of the record, if that notification is not sent in Cohen and subsequently received, the other participants continue processing blindly. That may last for a few seconds. Depending on the way the network has been configured and the way responsibilities have been assigned, that may allow the network to continue operating. More likely than not, however, the network will eventually collapse in on itself and fail because this entity, which has been assigned some particular responsibility to maintain the network, has left it. No one else will know about it. Has left it without sending a packet of information saying goodbye. Goodbye, correct. So that functionality will be lost. Can't a machine be set up so that the instant it suddenly is disconnected without any shutdown procedures, it just automatically sends a goodbye message so people know you're checked out? Could it be set up such that a message is sent? Yes. Arguably, that hypothetical could take place. But again, that's not what is disclosed in the Cohen reference, nor is there any suggestion, you know, one skilled in the art, anything of that matter. Nothing was raised in that regard with respect to prosecution during examination or before the Board of Patent Appeals. So is your hypothetical possible? Yes. Was it disclosed or argued during prosecution?  All right. Well, let's hear from the solicitor. Thank you. May it please the Court, as Mr. Colby has pointed out, there is a real invention here. The invention does guard against unexpected departures. That invention, however, is not claimed in Claim 1. Claim 1 broadly reads on the prior Cohen. I just want to clarify one of the points that Mr. Colby just made. In the third step, the broadcasting step in the Claim 1, there's a thereby clause. It's broadcasting a notification to existing participants of the online session over the communication network, thereby notifying the existing participants that the first participant has disconnected from the online session. In other words, even though the first participant is in the process of disconnecting when that message goes out, that message notifies the other parties when they receive it that the first participant has disconnected. So you're relying entirely on the fact that there's some temporal, that there's some timeframe between the time the host sends the message and the time it's received? We certainly are entitled to rely on that fact based on the Cohen reference, based on the way it describes the exiting process, then the receipt in Claim 10 again on A17 and A18. But the Cohen reference uses words like exiting and departing. And the provision you just cited in the claimant issue says has disconnected. And there's kind of a difference between the two, right? Well, as Judge Jacobs pointed out, Claim 10 also refers to the remaining participants receiving the message that was sent by the host, which implies that the host has exited already. And I'm looking at Claim 10 on A17, Column 15, about Line 6 here, as the application session continues, receiving the remaining clients. But the remaining clients only get this if it was sent. And it could only be sent if the disconnection was intentional or anticipated or unavoidable, but foreseen. What if, in the example that I gave your adversary, what if the person who is cleaning the floor accidentally steps on the plug, nobody knows it for an hour, and what kind of a message is sent under the Cohen patent? I agree with Mr. Colby. A message apparently would not be sent. There's a disconnection there, and that is why... But wouldn't that be a useful thing for the remaining participants to know? That's why I started off saying Mr. Colby's client has made a very useful invention. They've got the idea that you should send continuously a message, and when that message is no longer detected... I'm sorry, the host client is repeatedly sending a message... I'm here, over and over again. Over and over again, and when that message is not received, that constitutes a detection of disconnection by the host. So that's a good invention. That's not... The claim is not limited to that invention. And that's all predicated on the fact that there's no required sequence of the steps. The government would agree, in other words, the government would agree that if this were a necessary sequence, it's fine. I think that's fair to say, yes. And I can turn to that as well, and I'll turn to it right now. I think there's nothing in the grammar or the logic of this claim that requires it to be... But the claim is limited to a situation in which the host has disconnected. It's just gone. It's already gone. Then you have a sequence involved in that. I mean, your adversary says grammar matters. Well, no, we're saying it's detected that the host has disconnected. And in this particular case, as the board found, as the examiner found, in the context of Cohen, when you receive that message sent by the host as he is exiting, you are detecting that the host has disconnected. But that would mean that you could receive that message after the host has already disconnected. And that's absolutely correct. That could well happen. It can happen. Well, the host disconnection process occurs locally.  The remote clients are presumably at other locations across the world. The speed of the signal travels at the speed of light. There's some processing time involved. That detection may well take place after the remaining participants have become the quote, remaining participants, as Claim 10 says they are when they receive that message. So you can receive the remaining other participants, not the host. You can receive the packet of information sent by the host computer even after the host computer has already disconnected. I think that's an absolutely fair characterization. I'm not even sure... That's not a characterization. That's a statement of fact that either is so or not. It's a statement of fact based on the Cohen reference. The Cohen reference, when it refers to remaining participants receiving that message... Well, Cohen, it may posit that, but is it possible for that to happen? Well, as I just explained, it's certainly physically possible. It takes a certain amount of time for a message to travel over a network from one computer to the next computer. And during that time, the disconnection, which occurs locally, could well have occurred. And I think, again, I think that's, as a matter of fact, what Cohen is telling us happens. I can go one step further if it's additional... Generally, what the Cohen patent is conceiving is that a host computer, before shutting down, is going to send a packet of information to everybody else saying, pick another host because I'm checking out. Or, more accurately, by the time you receive this, I'm gone. It doesn't really contemplate that you're going to send this, and in the very split second that you send it, you're going to pull the plug. Well, the host computer has absolutely nothing else to do at that point. There's nothing in Cohen that suggests that the host is still there. In fact, the flow charts, figure 2D, for example, on page A7, says immediately after the host change packet is received, the next thing that's done is the host duties are transferred. So the original host is gone. If one likes, one could take that further step of reassigning the host duties as being the detection that the host has disconnected. When the remaining computers see the host reassignment occurring within their own processors, that is also further evidence that they are detecting that the first host has disconnected. There are examples one could spin out. The Elvis leaving the building example isn't bad. I see Elvis leaving the building. Yes, I'm seeing that. But an instant later, I recognize that he has left the building. If we limit ourselves to the instantaneous point in time where the message is being sent, then, yeah, there's disconnecting. But a second later, detected disconnected. But that second can be all in all, because the question is whether there is time to send this packet of information. If somebody steps on the plug, there's no time to send anything. It has no juice. It's gone. It has departed. You're right, and if they limit the claims in that particular way to guard against the unexpected departure, then there may be something that would withstand a rejection over the Cohen reference. But that's not done here. Here we have a message broadcast, and that message is received, which is a detection of the disconnection of the individual who broadcasts the message. Let me, as Judge Post pointed out, this does come down to the sequence of steps in Claim 1, and there is nothing in the grammar or logic of them that requires the detecting step to occur before the broadcasting step. The broadcasting step is a self-contained step, simply relating to broadcasting a notification to existing participants, thereby notifying them that this disconnection has occurred by the time they receive it. Again, we're before the PTO here. We apply the broadest reasonable interpretation standard. The baseline rule when we're talking about a sequence, when we're talking about a method claim like this, is that the claim steps do not necessarily have to occur in sequence unless there's something expressed in the claims that indicate that they do occur in sequence. And here, there's a best in ambiguity. Under the broadest reasonable interpretation, these claims need not occur in sequence. But does your argument depend? I mean, even on a fair or reasonable reading of the claim language, it still depends on reading the term has disconnected to mean is disconnecting, right? I think that's fair. Detection of is disconnecting is the same as detection of has disconnected. That is correct under that reading. But perhaps more importantly, I do want to turn to the waiver argument. As we pointed out in our brief, it was clear to the board that Mr. Tritani thought his steps occurred in that particular sequence. But the problem is the board is operating against the baseline that says a method claim, the steps and method claim do not necessarily occur in that sequence. And that's what the board's holding reflected when it found the broadcasting step could be made by the departing host and, therefore, that the steps did not have to occur in that sequence. It was up to Mr. Tritani either at that time or before that time to raise these two cases, Altairis and interactive gift exchange, both of which certainly held that the steps do not have to occur in sequence, and explain how, under the tests presented by those cases, his claim, nevertheless, did occur in sequence. And that's a simple matter of administrative law, allowing the administrative body the chance to address the argument in the first instance. Here we've got a legal theory, but it's an expansion of the original legal theory. The original legal theory only appears in sentences, which indicates what he believes the claim holds, and the citations to the anticipation cases don't ever specifically talk about claim order or anything like that. He had an obligation before the board to raise these two cases. This morning I noticed there's a fairly recent case, the Boston Scientific case decided in August 2007, which goes over this principle once again, as do the cases, starting with the Supreme Court L.A. Tucker case, cited in our brief. But it says a party may not, however, advance new legal theories at the trial court level, read the appellate level in this case. This was an appeal for interference which went to the district court, even if the overarching legal issue was presented below. So here's a legal theory that they're now presenting for the first time before this court, based on two cases not discussed in the lower adjudicative body, where you don't have the benefit of the PTO board's reasoning on those two cases. Okay. Thank you very much. All right. Thank you. Mr. Springer. Thank you, Your Honors. I'd just like to address two issues in rebuttal, the first being, again, quickly with respect to the waiver issue, and with respect to the SIMED case, which I appreciate counsel this morning bringing to my attention before our argument, so we did briefly discuss that. SIMED, I think, is an extreme example, as many of the cases that were cited with respect to the waiver argument. SIMED involved an issue of, at the board level, a stipulation concerning priority, whereas on appeal, issues concerning constructive trust and equitable assignment were raised. These were clearly two issues in two very different ballparks, two different zip codes. They're nowhere close to the issue that we're addressing here with respect to, does the cited art disclose each and every element as set forth in the claim, as was discussed numerous times during prosecution and before the board. Again, footnote three of the N. Ray Watts case clearly supports reinforcing, rediscussing, clarifying that sort of issue, as we're doing here on appeal. With respect to the claim interpretation issue, I'd just like to read briefly, with the Court's permission, the verbatim language of Claim 1, as may be found on A10 of the record, specifically the broadcasting step, because I think having the clear, focused language is critical. The broadcasting step says, Broadcasting a notification to existing participants of the online session over the communication network, thereby notifying the existing participants that the participant has disconnected. I want to be clear in this, in the sense that we've talked numerous times about possibilities or the latency issue. What if the notification is sent right now, but it's not received until later? I want to make sure that we're not inadvertently setting up a straw man, because that's not the issue here. The claim language says, Broadcasting a notification that the participant has disconnected. That broadcast, at the time it is broadcast, the broadcasting part of the limitation, that notification must be indicating that the participant has disconnected. So at the time of the broadcast... Well, it says what it's indicating. It doesn't verify the underlying fact that he has. I disagree, respectfully disagree, because the claim language says, Has disconnected. Broadcasting a notification that the participant has disconnected. Again, that disconnection must be affirmative. It must be complete. It cannot be in the process. It cannot be intended. It cannot be planned. The claim language says on its face, Broadcasting a notification that the participant has disconnected. You would agree that it is possible, physically, electronically, for the packet sent via the host computer, under the Cohen patent, to be received by the remaining clients, even after the host computer has disconnected? I see you're out of time, if I may answer your question. I completely disagree. It is possible that the notification be sent while the participant is still there, and then by the time it is received, that participant has disconnected. That's not the issue, and this is the concern I had concerning the straw man, is that in this scenario that you've described, and it was raised in the director's brief, that is not a broadcast that the participant has disconnected. At the time that packet is broadcast, broadcasting a notification, that notification must concern the fact that the participant has disconnected. There must be that affirmative disconnect. So at the time that packet is sent, the disconnection must have been complete, and that is simply not taught, nor is it possible, with respect to the Cohen reference. Thank you. All right, thank you.